**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**WILLIAM BAKER,**

**Plaintiff,**

**v.** **Case No. 8:09-cv-2450-T-30AEP**

**WORLD TECHNICAL SERVICES, INC.,**

**Defendant.**

**________________________________________/**

# ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 18), Plaintiff's Response in opposition (Dkt. 27), and Defendant's Motion to Strike (Dkt. 28).[1] The Court, having reviewed the motions, response, record evidence, and being otherwise advised in the premises, concludes that the motion to strike should be denied as moot and the motion for summary judgment should be granted in its entirety.

## BACKGROUND

On August 16, 2006, Plaintiff William ("Mike") Baker began employment at Field Support Services Inc. ("FSSI"), a predecessor to World Technical Services, Inc. ("WTSI" or "Defendant"), the Defendant in this case. FSSI and WTSI are subsidiaries of ASRC Federal Holding Company ("ASRC"). WTSI offers a comprehensive array of both mission-critical and base support solutions for military and government agency customers. Plaintiff

[1] Notably, Plaintiff failed to file any response to Defendant's motion to strike portions of Plaintiff's affidavit and the affidavit of Christine Baker.

was familiar with FSSI prior to his employment because his wife Christine Baker had worked as a Secretary for FSSI since March 2004.

Prior to Plaintiff's employment with FSSI, he became very ill and was admitted to a hospital. Mrs. Baker's coworkers worked together to raise funds to help her and she was allowed to work a flexible schedule so she could visit and later care for Plaintiff. After Plaintiff recovered, he spoke to Melvin Cook, a project manager at FSSI, about available positions. Cook encouraged Plaintiff to receive certification for operating heavy equipment. Plaintiff took Cook's advice and received his certification to operate heavy equipment. After Plaintiff received his certification, he again spoke to Cook about employment with FSSI. Shortly thereafter, Plaintiff completed a job application and later received an offer of employment on August 16, 2006, for the part-time heavy equipment operator position with an hourly rate of $15.51. Cook explained to Plaintiff that the purpose of his employment was to build a road at Avon Park, a special project of the Federal Government. According to Plaintiff, he believed that he could eventually transition into a full-time employee.

Initially, Plaintiff worked 40 hours per week while building the road at Avon Park. These hours remained fairly steady for the first few months of his employment. After the completion of the special project, Plaintiff's hours decreased. In 2007, Plaintiff's hours decreased because there was less demand for a part-time heavy equipment operator. Plaintiff was called into work during Explosive Ordinance Disposals ("EOD")/Range Maintenance cycles. EODs occurred approximately twice a year, usually during the winter and spring. During the EOD's, Plaintiff would work approximately 40 hours per week for a two week

span. Plaintiff primarily worked with Charles Hoppes, a general maintenance worker. Plaintiff stated during his deposition that it was understandable that additional work may not be available because he was the only part-time heavy equipment operator and there were four full-time heavy equipment operators.

On or about August 24, 2007, Plaintiff prepared correspondence addressed to "HR" and changed his status to disabled on the Self Identification EEO Form.[2] According to Plaintiff, he did not initially identify himself as disabled because he "miraculously recovered to the point where [he] was able to work some and go to school through a disabilities program to learn heavy equipment operating." Baker Depo., Ex. 9. According to Plaintiff, at the time he changed his status to disabled, he was still able to perform the duties of his position.

About a month later, in October 2007, Cook resigned from employment and a new project manager, Charles Johnson, took over management of the contract. Around this same time, on October 9, 2007, Plaintiff filed a Charge of Discrimination, alleging age and disability discrimination. According to Johnson, the transition to project manager occurred so quickly that he did not review the employees' personnel files and told everyone that their slates were wiped clean and to look at his arrival as a new beginning.

In 2008, Plaintiff continued to primarily work during the twice yearly EODs. On or about April 15, 2008, Plaintiff met with Johnson and discussed his desire to work more

[2] Plaintiff's alleged disability is muscular dystrophy and polymyositis.

hours. Johnson told Plaintiff that there were limited opportunities for over and above surge work that would require intermittent heavy equipment operators. With the contract coming to an end, the available work was mainly for general labor, such as grass cutters, a labor class in a lower Service Contract Act,[3] i.e., general maintenance workers were paid at a lower hourly rate than Plaintiff. Johnson told Plaintiff that he could not call someone in and pay the heavy equipment operator rate for a lawn mower, a lower pay rate. Plaintiff expressed his desire to work a lower pay rate if it allowed him to work additional hours. Plaintiff confirmed this request in writing and Johnson began to work the logistics to create two labor categories for Plaintiff.

It is disputed in the record as to what exactly happened after Plaintiff completed the request. According to Johnson, Plaintiff recanted and informed Johnson that he was willing to perform tasks in a lower labor category, but wanted to be paid as a heavy equipment operator pay rate. According to Plaintiff, Johnson told him that he found out that Plaintiff could not perform tasks in a lower labor category, because that was a violation of the Davis-Beacon Act. There is also an e-mail in the record from Mrs. Baker to Johnson, dated July 8, 2008, stating the following:

> Charlie: I spoke with Mike and he said that he will not be applying for the Lawn Mowing/Grounds Maintenance Position - but thank you for asking. He has thought it over and feels that Heavy Equipment Operating is much easier for him - due to the type of disability that he has. He looks forward to coming in to work the EOD.

---

[3] The McNamara O'hara Service Contract Act requires contractors and subcontractors performing services on prime contracts in excess of $2,500 to pay service employees in various classes no less than the wage rates and fringe benefits found prevailing in the locality.

In 2009, Plaintiff worked one EOD. The Federal Government did not schedule any additional EODs to take place at Avon Park. Johnson placed Plaintiff and four other employees on inactive status. According to Johnson, these employees were placed on inactive status because there were no EODs scheduled for the foreseeable future. According to Johnson, the change was purely administrative and lessened his work load because he did not have to prepare weekly time sheets for inactive employees.

On or about December 2, 2009, Plaintiff filed a complaint against Defendant, alleging that he was subjected to age discrimination, disability discrimination, and retaliation. Plaintiff abandoned his age-based discrimination and retaliation claims in his response to Defendant's summary judgment motion.

## DISCUSSION

### I. Summary Judgment Standard

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine

the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

**II. Defendant's Motion to Strike**

Defendant moves to strike portions of Plaintiff's affidavit and the affidavit of Mrs. Baker, filed in opposition to Defendant's motion for summary judgment. Defendant argues that portions of the affidavits directly contradict Plaintiff's and Mrs. Baker's previous

deposition testimony in this case. Defendant also argues that portions of the affidavits contain inadmissible hearsay and are not based on any personal knowledge.

Although Defendant's arguments have merit, even if the Court did not strike any portions of the affidavits, its conclusion that Defendant is entitled to summary judgment would remain the same. And the portions of the affidavits that are speculative, conclusory, and not based on evidence other than the affiant's opinion, are insufficient to establish a genuine issue for trial. *See Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989) (noting the plaintiff's subjective conclusions, without supporting evidence, are insufficient to raise an inference of intentional discrimination); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir. 1987) (stating conclusory allegations, without more, are insufficient to raise an inference of discrimination); *Roberson v. Bowie States Univ.*, 899 F.Supp. 235, 238 (D.Md. 1995) (holding bare allegations that negative consequences occurred because one complained about employment practices is insufficient to state a claim of race discrimination under the 12(b)(6) pleading standard); *see also Hawthorne v. Baptist Hosp., Inc.*, 2010 WL 716539, *3 (N.D. Fla. 2010); *Reeves v. DSI Security Services, Inc.*, 2008 WL 2568477, *4 (M.D. Ala. 2008), *Gore v. GTE South, Inc.*, 917 F.Supp. 1564, 1571 (M.D. Ala. 1996).

Accordingly, Defendant's motion to strike will be denied as moot.

## III. Plaintiff's Disability Discrimination Claim

### A. Plaintiff fails to establish a *prima facie* case of disability discrimination because the record does not reflect that Plaintiff suffered an adverse employment action or that his disability was a substantial or motivating factor behind any of Defendant's actions

To prevail on his ADA discrimination claim, Plaintiff must establish that (1) he had a disability, (2) he was qualified to perform the job he sought, (3) he was subjected to an adverse employment action, and (4) his disability was a substantial or motivating factor that prompted Defendant to take the adverse employment action. *Collado v. United Parcel Serv. Co.*, 419 F.3d 1143, 1152 n. 5 (11th Cir. 2005). Here, the record reflects that Plaintiff did not suffer an adverse employment action. It is also undisputed that Defendant did not discriminate against Plaintiff based on any disability he may have. Thus, the Court need not determine whether Plaintiff was disabled as a matter of law.

To meet the element of an adverse employment action, Plaintiff "must show a serious and material change in the terms, conditions, or privileges of employment," *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1239 (11th Cir. 2001), such that "a reasonable person in [his] position would view the employment action in question as adverse," *Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998). In general, the factors that can make an employment action adverse include a loss or reduction in pay, responsibility, prestige, or opportunities for professional growth or advancement. *Id.* at 1452.

Taking all the facts in a light most favorable to Plaintiff, there is nothing in the record establishing an adverse employment action. Plaintiff and Mrs. Baker's affidavits state in a conclusory fashion that other employees were called in to work or assigned work instead of Plaintiff and that Plaintiff did not receive a pest controller position. But the record reflects that the employees who were called in to work were either senior to Plaintiff or full-time employees, who were classified differently, or general maintenance workers, who were paid

at a lower hourly rate. Moreover, although Plaintiff applied for a pest controller position, the record reflects that Plaintiff was not qualified for the position because the pest controller position required a Florida State license for pest control, a license that Plaintiff did not hold.

Simply put, Plaintiff cannot claim he suffered an adverse employment action because he was unhappy with Defendant's business decisions. Importantly, neither "every unkind act," nor "everything that makes an employee unhappy," amounts to an actionable, *adverse* employment action under the federal employment discrimination statutes. *Id.* at 1449. Otherwise, as is clearly demonstrated by the events complained of in the present case, "every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Id.* (*quoting Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)).

Plaintiff's pay rate was never changed, he was not terminated, and, as a part-time employee, he was called in when there were EODs scheduled, which were based on the Federal Government's demand. Plaintiff speculates that he could have been called in for additional hours, but he points to no evidence in the record reflecting that additional hours were available for a part-time heavy equipment operator position. And the placement of Plaintiff to inactive status was solely an administrative change. Indeed, Plaintiff admitted during his deposition that he was not even aware that he had been placed on inactive status.

Plaintiff's other allegations of discrimination relate to stray comments made by co-workers, which are insufficient to establish an adverse employment action.[4] Other allegations of alleged discrimination, which Plaintiff describes in his affidavit for the first time, including that he was the only employee who was not provided a radio when he worked outside and that he was treated unfairly at company cookouts and not called in to attend certain safety meetings are insufficient to establish an adverse employment action.

Even if the Court were to assume, for the sake of argument, that the actions Plaintiff complains of constituted adverse employment actions, the record is bereft of any evidence that his disability was a substantial or motivating factor that prompted Defendant to take these actions. Again, other than some stray remarks[5] by other employees, who were not decision-makers, Plaintiff points to nothing in the record establishing that he did not receive jobs or assignments because of his disability, other than his and his wife's own suspicions and conclusions that Plaintiff's disability was the motivating factor. Notably, during Plaintiff's deposition, he conceded that he had no evidence that his alleged disability was the reason for the decrease in his hours. Plaintiff also testified that he had no evidence that

[4] According to Plaintiff, two co-workers asked him if he was "catchy" and another co-worker's wife commented to Mrs. Baker, in the absence of Plaintiff, that Plaintiff was comparable to her mentally challenged son. Plaintiff also stated that Bill Ballentine, a Foreman, told Plaintiff he was "expendable," when Plaintiff asked why only he and another employee were assigned to EOD work, which involved digging up ordnance underground and disposing of it safely.

[5] Notably, some of the remarks made are ambiguous as to whether they refer to Plaintiff's alleged disability. Asking if Plaintiff is "catchy" could relate to something other than Plaintiff's alleged disability. And the comment about being "expendable" could have nothing to do with a disability.

placement on inactive status stemmed from his alleged disability. Finally, Mrs. Baker admitted during her deposition that she had no first-hand knowledge that Plaintiff was discriminated against based on his alleged disability.

**B. Even if Plaintiff established a *prima facie* case of discrimination, the record reflects legitimate, nondiscriminatory reasons in support of Defendant's actions and Plaintiff has not demonstrated that the asserted reasons are merely pretext for discrimination.**

After a plaintiff has shown a *prima facie* case of discrimination and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000).

If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination. Where the defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons. *Chapman*, 229 F.3d at 1024-25.

Even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of discrimination based on his disability, Defendant offers legitimate, non-discriminatory

reasons for its actions. Specifically, the record reflects that there was not a demand for an employee in Plaintiff's position, other than for the EODs, which were based on the Federal Government's demand and which occurred approximately twice a year. The record reflects that Plaintiff did not receive the pest controller position because he was not qualified for the position. The record also reflects that when other employees were called in for jobs, the employees were either more senior to Plaintiff or in a lower pay category. And the record reflects that Plaintiff could not perform general maintenance work at his pay level. Finally, the record reflects that the placement to inactive status was an administrative change which applied to four other employees, as well as Plaintiff.

Having articulated legitimate, non-discriminatory reasons, the burden shifts to Plaintiff to show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered legitimate reasons. *Combs*, 106 F.3d at 1538. Plaintiff fails to meet this burden. Plaintiff points to no evidence in the record to demonstrate pretext, other than his suspicions and his wife's suspicions that he was being discriminated against because of his alleged disability and their sweeping conclusions that "other" non-disabled employees were treated more favorably. The law is clear, however, that Plaintiff's own evaluation and opinion is not a sufficient basis to establish pretext. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1332-33 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).

The death knell of Plaintiff's claim is his and his wife's admissions during their depositions that they have no actual evidence that Defendant's actions were due to Plaintiff's alleged disability.

Accordingly, summary judgment is granted in favor of Defendant on Plaintiff's claim of disability discrimination.

**IV. Plaintiff's Retaliation Claim Based on His Disability**

Where, as here, a plaintiff presents no direct evidence of retaliatory intent, the plaintiff may proceed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *E.g. Crawford v. Carroll,* 529 F.3d 961, 975-76 (11th Cir. 2008); *see also Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir. 1997) (noting that ADA retaliation claims are assessed under the same framework as Title VII retaliation claims). Under this framework, the plaintiff must establish a prima facie case of retaliation by showing that "(1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action." *Brown v. Ala. Dep't of Transp.,* 597 F.3d 1160, 1181 (11th Cir. 2010) (internal quotation marks omitted). If the plaintiff establishes a *prima facie* case of retaliation, then the burden shifts to the employer to articulate a legitimate non-retaliatory reason for the challenged employment action. *Id.* "If the employer offers such legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." *Crawford*, 529 F.3d at 976.

The Court has already concluded that Defendant has established legitimate non-discriminatory reasons for its actions related to Plaintiff. And the Court concluded that Plaintiff falls woefully short of establishing any evidence of pretext. Thus, even if Plaintiff could establish a *prima facie* case, his retaliation claim still fails. However, Plaintiff's retaliation claim fails for yet another reason, a reason that is elementary: Plaintiff acknowledges that the vast majority of the alleged discriminatory acts, such as the reduction in his hours and his superior's failure to assign him heavy equipment duties as well as duties and/or assignments for which he volunteered and was qualified, occurred prior to the date of his Charge of Discrimination. And it is axiomatic that retaliation occurs as a result of the protected activity, i.e., the Charge of Discrimination. In other words, a causal connection between the protected activity and the complained of activities is necessary.

Finally, the placement on inactive status in June 2009 occurred almost two years after the filing of Plaintiff's October 2007 Charge of Discrimination and Plaintiff testified that he had no knowledge of such placement until September 2010. The only other claims of retaliation that occurred after the filing of the Charge of Discrimination relates to trivial slights, such as comments from co-workers as to why Plaintiff filed the Charge, an alleged comment from Johnson that the Charge was "bullshit," and Plaintiff being treated poorly at one of the company's cookouts. All of these actions, even considered cumulatively, are insufficient to establish adverse employment actions.

Accordingly, Defendant's motion for summary judgment must be granted as to Plaintiff's retaliation claim based on his alleged disability.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Dkt. 18) is hereby GRANTED.

2. Defendant's Motion to Strike (Dkt. 28) is hereby DENIED AS MOOT.

3. The CLERK is directed to enter final summary judgment in favor of Defendant WORLD TECHNICAL SERVICES, INC. and against Plaintiff WILLIAM BAKER.

4. The CLERK is directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on April 18, 2011.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2009\09-cv-2450.msj18.frm